## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHRISTOPHER K. BROWN,          ) | |
|         ) | |
|       Plaintiff,       ) | |
|         ) | |
| v.         ) | Case No. 07-1178-JTM |
|         ) | |
| CITY OF MAIZE, KANSAS, *et al.,*  ) | |
|         ) | |
|       Defendants.     ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Now before the Court is Defendants' Motion to Enforce Subpoenas for Business Records (Doc. 58) and supporting Memorandum. (Doc. 59.) The motion seeks enforcement of business records subpoenas served on Terry L. Malone of Martin, Pringle, Oliver, Wallace & Bauer, LLP (Doc. 41), and on South Prairie Properties, LLC (hereafter "SPP") (Doc. 52.) SPP has filed a Memorandum in Opposition (Doc. 67), and Defendants have filed a Reply. (Doc. 68.) Terry L. Malone has not filed any memorandum opposing the motion and the time for such motions has expired. D.Kan. Rule 6.1(d)(1). After a careful review of the submissions of the parties, the Court is prepared to rule on Defendants' motion.

**BACKGROUND**

The Court previously summarized the background of this case in its November 21, 2007, Order  (Doc. 31), which ruled on several motions filed by the parties.  The dispute centers around a strip shopping center known as "The Maize Center," located at 5525 North Maize Road, Maize, Kansas.  While the Court noted some confusion in the pleadings as to who had owned the strip center as between Plaintiff Christopher Brown and two other entities – Prestige Management, LLC and Sedgwick Properties, LLC – the Court allowed an amendment of the Complaint to add those entities as parties plaintiff in this case.

*1.*     *Mr. Malone and Martin, Pringle, Oliver, Wallace & Bauer, LLP.*

Mr. Malone and his law firm have represented Plaintiff Christopher Brown during events concerning the strip center which give rise to the claims by Brown against Defendants.  In fact, Brown is claiming damages in the present case which include $43,799.00 in monies paid to Mr. Malone and his law firm in connection with the sale of the property which is the basis of the present action.[1]  Mr. Malone

---

[1]  The Court has recently entered a Memorandum and Order requiring Plaintiff to fully answer an interrogatory which seeks detailed supporting information concerning this claim for attorneys fees paid to Mr. Malone's firm.  (Doc. 73.)  In a prior response to this same interrogatory, Plaintiff Brown provided copies of billing statements of Mr. Malone's firm which had been highlighted to presumably point out the specific charges that were included in Plaintiff's claim for attorneys fees.  *See* Doc. 55 at ¶ 2. Unfortunately, the highlighted entries were not wholly consistent with the amount sought by Plaintiff.  For this reason, the Court granted Defendants' motion to compel a more

is also allegedly a witness to certain events relevant to the present lawsuit which occurred on October 3, 2005, in that he purportedly communicated with officers of the Maize Police Department at the time of this occurrence.  (Doc. 59 at 2.)

Defendants' subpoena to Mr. Malone and his firm requests four specific categories of documents: (1) documents reflecting any contact or communication on behalf of Plaintiff Brown or the other two named Plaintiffs with any officer or employee of the City of Maize; (2) documents concerning the transfer of real estate identified as 5255 N. Maize Road, Maize, Kansas;  (3) documents concerning the transfer of real estate identified as 5255 N. Maize Road, Maize, Kansas from Prestige Management, LLC to Sedgwick Properties, LLC;   and (4) documents related to any actual or prospective sale of that property by Sedgwick Properties, LLC.

Mr. Malone objected to producing these documents on the grounds that the documents are protected by attorney/client privilege and work product immunity and that the documents in categories 2, 3 and 4 above are so voluminous that it would be unduly burdensome to locate and copy them and provide an appropriate privilege log.  (Doc. 48.)  Defendants offered to limit the subpoena by excluding any documents covered by attorney/client privilege (which would obviate any need

complete answer to the interrogatory concerning payment of attorneys fees to Mr. Malone's law firm.  (Doc. 73 at 5-7.)

for a privilege log) and to pay normal copying charges.  (Doc. 59, Exhibit 3.)

## 2.    *South Prairie Properties, LLC and Thomas Steele.*

SPP alleges that it purchased the strip shopping center from Plaintiff, Sedgwick Properties in August 2006.  (Doc. 67 at 1.)  SPP states that it had no prior dealings or relationships with any of the Plaintiffs.  (*Id.*)  SPP further states that it presently contracts with Brown Contracting, LLC, which it believes is owned by Plaintiff Christopher Brown, for periodic maintenance and property management by means of an oral agreement.  (*Id.* at 1-2.)

The subpoena requests that SPP produce any and all documents regarding Christopher Brown, including, but not limited to, correspondence, e-mails, contracts, complaints and notes.  (Doc. 67 at 2.)  SPP objected on the grounds that the subpoena was vague, overbroad and did not provide any compensation to SPP for reviewing and producing its business records.  (*Id.*)  SPP argues that the language "all documents regarding" is necessarily too broad.  (*Id.*)  There was a discussion between Defendants' counsel and Mr. Steele (a principal in SPP) about payment for copies and about the entry of a protective order.[2]  In addition to this,

---

[2]  Mr. Steele purported to join in SPP's opposition to producing SPP's business records.  (Doc. 67 at 1.)  However, there was also a subpoena *duces tecum* served on Mr. Steele personally (Doc. 53) which is related to the fact that he has been designated by Plaintiff as a witness who will testify about his opinion of the Maize Center property.  (See Doc. 73 at 4.)  Defendants argue that Mr. Steele has never served an objection as to his subpoena *duces tecum* and has not stated any specific grounds for objection to that

however, Steele (on behalf of SPP) demanded $150 per hour for an attorney to review any documents to be produced and staff time at the rate of $35 per hour to photocopy the documents (in addition to 15 cents per page copy costs).  (*Id.* at 3.)

## DISCUSSION

FED. R. CIV. P. 45 governs subpoenas to non-parties.  In regard to a non-party's compliance with a subpoena served upon it, subsection (c)(2)(B) of the rule states in relevant part:

> [A] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials . . . .  The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.  If an objection is made, the following rules apply: (i) At any time, on notice to the commanded person, the serving party may move the issuing

---

subpoena.  (Doc. 68 at 4.)  The subpoena on Mr. Steele was not simply a records subpoena, but sought Steele's testimony pursuant to a Notice to Take Deposition Duces Tecum.  (Doc. 45.)  The deposition notice identified two categories of documents Mr. Steele was to bring to the deposition: (1) valuations or appraisals of the Maize Center; and (2) all documents concerning Steele's opinion of value of the Maize Center.  (*Id.*) These are completely separate documents from those requested from SPP.  Mr. Steele did not appear for his scheduled deposition, telling Defendants' counsel that "he believed that the Court's ruling on the objection previously made on behalf of South Prairie would govern the deposition subpoena."  (Doc. 68 at 4.)  It is difficult for the court to construe SPP's memorandum in opposition to production of their records as having any bearing on Steele's production of different records at his deposition.  However, to the extent that Steele has attempted to join in requesting compensation for production and copying of documents related to his deposition, the ruling in this Memorandum and Order concerning such costs will also apply to the documents sought from Mr. Steele in connection with his deposition.

> court for an order compelling production or inspection. (ii)
> These acts may be required only as directed in the order,
> and the order must protect a person who is neither a party
> nor a party's officer from **significant** expense resulting
> from compliance. (emphasis added.)

Subsection (d)(2)(A) of the Rule provides the following regarding claims of

privilege by the non-party:

> A person withholding subpoenaed information under a
> claim that it is privileged or subject to protection as trial-
> preparation material must: (i) expressly make the claim;
> and (ii) describe the nature of the withheld documents,
> communications, or tangible things in a manner that,
> without revealing information itself privileged or protected,
> will enable the parties to assess the claim.

## 1.    *Subpoena to Mr. Malone and Martin, Pringle, Oliver, Wallace & Bauer, LLP.*

In response to Defendants' third party business records subpoena, Mr.

Malone and his law firm objected that "[a]ll categories" of documents requested

sought information "protected by the attorney-client and work-product immunity

from discovery."  (Doc. 48, at 1.)  Malone failed, however, to "describe the nature

of the withheld documents, communications, or tangible things in a manner that . .

. will enable the parties to assess the claim."  Fed.R.Civ.P. 45(d)(2)(A).  Further,

Malone and the law firm failed to respond to Defendants' motion to enforce the

subpoena.  As such, the Court must consider the Defendants' motion for

6

enforcement regarding Malone and his law firm to be uncontested.  D. Kan. Rule 7.4.

In the objection to the subpoena filed by Malone and his law firm (Doc. 48), they contended that

> categories 2, 3 and 4 potentially call for numerous documents that will require the undersigned and the undersigned's firm undue burden because of the considerable time and expense it will take to locate and product the documents for inspection and copying, as well as drafting the privilege log.

(*Id.*)  Although Fed.R.Civ.P. 45(c)(2)(B) requires the Court to "protect" a non-party "from significant expense resulting from compliance," Malone did not respond to Defendants' motion.  Even if the Court were to consider the burdensome objection contained in Malone's response to the subpoena (Doc. 59-3), that objection is entirely conclusory.  Malone provided the Court with no evidentiary basis as to how or why the document production would be unduly burdensome or the costs would be "significant."  The Court therefore **GRANTS** Defendants' motion to the extent it seeks the subpoenaed documents from Terry Malone and/or his law firm.  The Court notes that Defendants offered to specifically allow Mr. Malone to withhold any documents that are covered by the attorney-client privilege.  (Doc. 59 at 2.)

**2.      *Subpoena to South Prairie Properties, LLC and Thomas Steele.***

SPP and Thomas Steele responded jointly in opposition to Defendants'
motion to enforce.  (Doc. 67.)  On one hand, SPP and Steele argue that the
relationship with Brown is very limited – that SPP merely "contracts for periodic
maintenance and property management from Brown Contracting," which it
believes to be owned by Plaintiff Brown.  On the other hand, they argue that
Defendants' request for "[a]ny and all documents regarding Christopher Brown,
including, but not limited to correspondence, e-mails, contracts, complaints and
notes" is "overbroad and vague."  (*Id.*, at 2, 6.)  They continue that the "all
documents regarding" language of the subpoena is "necessarily too broad and does
not give any fair guidance to respondents."  (*Id.*, at 3.)  Finally, they argue that
Defendants' subpoena failed to include provision "for payment of the time and
expense of reviewing and copying the material, including counsel fees for such
work."  (Doc. 67, at 2, 6.)

Defendants reply that although Christopher Brown "no longer has any
ownership interest in the Maize Center," he remains "engaged on an ongoing basis,
in the management and maintenance of that commercial property."  (Doc. 68, at 1.)
Defendants contend that SPP has not established that it "would be unduly
burdensome for it to undertake the simple task of producing all of its records
regarding Mr. Brown."  (*Id.*, at 2.)  The Court is inclined to agree.  Because SPP

had no prior dealings or relationships with any of the Plaintiffs before it purchased the subject property in August 2006 (Doc. 67 at 1), the scope of the documents requested by Defendants is limited by the very nature and duration of the interaction of these parties.

Further, although the subpoena itself contained no provision for payment of costs and fees to SPP and Steele, Defendants have offered to reimburse SPP for the cost of producing the requested documents at $0.15 per page (Doc. 68, at 3), which the Court finds to be reasonable in this case.[3]  Defendants argue, however, that SPP and Steele's demand for attorneys' fees of $150/hour or staff costs at $35/hour is not warranted.  The Court  agrees.  SPP has made only vague references that certain documents may be protected by the attorney-client privilege, necessitating review by counsel and preparation of a privilege log.  SPP has failed, however, to "describe the nature of the withheld documents, communications, or tangible things" in a manner that would enable Defendants – or the Court – to assess the claim of privilege or how many potential documents might be subject to the

---

[3]  In cases allowing recovery of attorneys fees and expenses, this Court has concluded that copy charge of 10¢ per page is fair and reasonable.  *See e.g.*, ***Law v. Barton Co. Comm. College,*** No. 06-1202-WEB, Memorandum and Order of March 14, 2008 (Doc. 91 at 14-15) (reducing requested copy charge of 15¢ per page to 10¢ per page).  In this case, the 15¢ fee is appropriate in lieu of the requested paralegal charges in order to compensate the responding party for costs of collection of the responsive documents.

privilege.  *See* Fed.R.Civ.P. 45(d)(2)(A).  As to SPP's request for $35/hour to compensate staff for photocopying the responsive materials, the Court has concluded that these costs are included in the per page copying charges allowed in this case.  *See supra* note 3.

Finally, Defendants have consented to the protective order proposed by SPP and Steele.  (*See* Doc. 67, at 3 & Ex. B; Doc. 68 at 3.)  Having reviewed the proposed order, the Court is satisfied it will adequately protect the interests of SPP and Steele.  The Court is, therefore, entering that protective order as part of its ruling on the present motion.  Therefore, Defendants' motion for enforcement (Doc. 58) is hereby **GRANTED** to the extent it seeks the subpoenaed documents from SPP and Steele.  Because Steele has joined SPP in opposing the subpoena to SPP, and takes the position that the Court's ruling will also govern his deposition subpoena, the Court concludes that this opinion also covers any purported objection Steele may have had to production of documents requested the subpoena *duces tecum* for his deposition.  *See supra* note 2.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Enforce Subpoena for Business Records (Doc. 58) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants reimburse the responding

10

party at the rate of 15¢ per page for copies of responsive documents that are made

and produced by the responding party.

IT IS SO ORDERED.

Dated at Wichita, Kansas, on this 18th day of March, 2008.

 s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge