IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER K. BROWN,
PRESTIGE MANAGEMENT, LLC and
SEDGWICK PROPERTIES, LLC,

       Plaintiffs,

       v.                                           Case No. 07-1178-JTM

CITY OF MAIZE, KANSAS;
MAIZE POLICE DEPARTMENT;
MATT JENSBY; CATHY GRAY; and
CASSIE DOLEN,

       Defendants.

## MEMORANDUM AND ORDER

Christopher Brown, Prestige Management, LLC (Prestige) and Sedgwick Properties, LLC (Sedgwick) filed this action against the City of Maize, Maize Police Department, Police Chief Matt Jensby, former Police Officer Cathy Gray, and former City Treasurer/Deputy City Clerk Cassie Dolen. Brown asserts various violations of his constitutional rights: 1) a First Amendment claim against Jensby for allegedly soliciting tenants to sign no trespassing notices against Brown; 2) Fifth and Fourteenth Amendment claims against Jensby for the same conduct; 3) Fifth and Fourteenth Amendment claims against Dolen for sending letters to tenants about unpaid water bills and possible shutoff; 4) Fifth and Fourteenth Amendment claims against Gray for allegedly threatening to arrest Brown when he attempted to change locks; 5) claim for concerted action of the police defendants; and 6) a *Monell* claim against the City of Maize.

Summary Judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987). In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56 (c), the party opposing summary judgment must do more than show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Plaintiffs concede that summary judgment is appropriate for the Maize Police Department (Dkt. No. 101 - page 26), Cassie Dolen (Dkt. No. 101 - page 30), and the City of Maize. (Dkt. No. 101 - page 36). Thus, the court will not address the allegations relating solely to those defendants.

The following facts either are uncontroverted, or have not been disputed. Prestige owned the Maize Center from 2004 to May 31, 2006. Brown and Mike Lies each owned 49.5% of Prestige, and Brown managed Prestige. Brown and Lies become involved in a dispute over control of Prestige, resulting in Lies filing a legal action against Brown. At the time defendants filed their summary judgment motion, that action was still pending. Prestige transferred title to the Maize Center to Sedgwick in May of 2006. This was not a sale; there was no exchange of money. Prestige made the transfer to get clear title and to prevent Lies from interfering with the sale of the property to a third party. In September 2006, Sedgwick sold the Maize Center property to an unrelated third party, South Prairie Properties, LLC. The proceeds of the sale were used to pay off the mortgages to Emprise Bank and Legacy Bank.

During the relevant time period, there were seven tenants at Maize Center: Dopps Chiropractic, Edward Jones Investments, Tamales Mexican restaurant, Scandals Hair Salon, Maize Discount Liquor Store, Subway restaurant, and Baxter Dental (although the latter did not become a tenant until April 2005). Tamales Mexican restaurant was a d/b/a of Lubby, Inc., which was operated by Pat Alvarez. While the underlying facts are not clear from the parties' filings, at some point in early 2005, Maize Center tenants complained to Lies about Brown entering their leased space after hours and without tenant permission. At least one tenant (Tamales) already had a security camera; Lies gave the tenants permission to install security systems. He also had his counsel prepare a

document dated January 26, 2005, entitled "Notice of No Admission" that tenants could sign to indicate they did not want Brown to enter their leased premises.

Maize Center tenants asked Maize police officers what they could do about Brown entering without permission. A Maize police officer told the tenants that they could give Brown a no trespassing notice. The form is a standard form kept by the Maize Police Department that implements K.S.A. 21-3721. The form enables a property holder to give notice to another person that he or she will be considered a trespasser if he or she enters the property in the future. The Maize Police Department has kept the form and distributed it upon request since at least 1999. In response to a request from a Tamales employee relayed to him by another officer, Jensby placed a blank "no trespassing" form, with some brief instructions on who should sign, in an officer's box for delivery to Tamales. Jensby acted alone in making the decision to do so and he did not communicate or consult with any other police officers. No other Maize police personnel were involved, except for the officer who relayed the request from Tamales. Jensby did not act pursuant to a city policy; he exercised his own judgment regarding an appropriate course of action under the circumstances. No one ever signed the "no trespassing" notice. At the time, Jensby also was aware of tenant concerns about Brown at the Maize Center, and he was specifically aware of reports of concerns regarding Brown's off site actions toward a Tamales employee.

Brown did not witness the solicitation of tenants to sign "no trespassing" notices. Brown testified that every tenant told him they had been solicited by Jensby to sign no trespassing notices. He also testified that tenants told him in January or February of 2005 that they had been solicited to sign no trespassing forms in that same time frame. Alvarez is the only tenant who Brown recalls saying that someone from the Maize Police Department provided a no trespassing notice. The owners

<sub>4</sub>

of the Maize Discount Liquor store were never provided with a no trespassing notice by anyone from the Maize Police Department nor were they ever asked or encouraged to sign a no trespassing notice. Brown claims Jensby attempted to get tenants to sign no trespassing notices but was ultimately unsuccessful. Brown testified that he was told by tenants that Maize police officers asked them if everything was ok and if they were having any problems.

     Prestige first took steps to evict Lubby, Inc. in July 2005. Prestige's lawyer, Terry Malone sent two default letters to Pat Alvarez, the contact point for Lubby, Inc. The first letter, dated July 8, 2005, demanded that Alvarez immediately surrender possession. The second letter, dated July 11, 2005, acknowledged that Alvarez contended that Lubby, Inc. was not in default and claimed it had made payments directly to Emprise Bank. On October 3, 2005, at approximately 7:07 p.m., Officer Gray was dispatched by Sedgwick County emergency communications to a reported disturbance at Maize Center. When Gray arrived, she found Brown was there with a locksmith to change the locks on the Tamales restaurant. Alvarez was upset, ranting and raving. Brown was also upset, and was yelling at Alvarez. The two men were standing face to face and appeared to be ready to hit one another. A Sedgwick County deputy also responded to the call and was present on the scene. Brown told Gray the tenant was in default and that he had a right under the lease to change the locks. Gray asked Brown if he had anything from the court authorizing him to lock Alvarez out of the rented space.

     Alvarez denied owing any money to Brown or his business. He claimed he had been paying Emprise Bank, the mortgage holder on the Maize Center, directly. In a letter dated June 15, 2005, Emprise had notified Prestige that it was exercising its right to have tenants send their rent payments directly to the bank for application to the mortgage loans. Alvarez said Brown or his business owed

him money for work he had done. Alvarez telephoned Lies, who spoke to Officer Gray on the telephone. Lies told Gray that Brown did not have the right to change the locks. Brown testified that Gray told him if he did not change the locks back she could charge him with burglary and arrest him. Brown also testified Gray told him that unless she was provided with a signed eviction notice she would not allow him to lock the building down. Brown then told the locksmith to change the locks back. Brown claims that if he could have locked Alvarez out, he would have seized the assets in the rented space. Brown claims that the seizure of Alvarez's assets would have created incentive for Alvarez to pay the alleged overdue rent.

As of October 3, 2005, there was no court order or writ authorizing Prestige Management or Brown to take any action with respect to the premises rented by Lubby, Inc. Brown did not provide a court order to Gray that authorized him or Prestige to change the locks, nor did he show her a copy of the lease. In order to keep the peace and preserve the status quo, Officer Gray directed Brown to change the locks back. Alvarez was permitted to enter the premises and he removed his property. Officer Gray left the scene at approximately 8:05 p.m. Officer Gray did not arrest Brown on October 3, 2005. Officer Gray acted alone in making the decision not to permit Brown to change the locks on October 3, 2005. No other Maize Police personnel were involved. Officer Gray did not act pursuant to a city policy or custom. Officer Gray exercised her own judgment regarding an appropriate course of action under the circumstances. Plaintiffs never sued Alvarez or Lubby, Inc. to collect unpaid rents.

Plaintiffs' claim for diminution in value is based on the following assumptions: (1) an addition to Maize Center would be built; (2) the existing liquor store tenant would move into a larger space in the addition; and (3) new tenants would fill the space previously occupied by the liquor store.

Plaintiffs' claim requires all those assumptions to come to pass to increase the value of the property to $1,630,000.

Brown testified that the owners of Maize Discount Liquor Store told him they lost interest in moving into a larger space because of the ongoing issues between the Maize Center and the Maize Police, and the police coming up to the building. The decision of the owners of Maize Discount Liquor Store not to expand was not due to any action of Maize Police Department. Sedgwick Properties, LLC sold the Maize Center in September for $1,200,000.00. The owners of Maize Discount Liquor Store never signed a lease for a new building.

The owners of Maize Discount Liquor Store decided not to expand after a third party purchased the Maize Center in September 2006. The owners of the Maize Discount Liquor Store said their decision not to expand was due to concerns about higher rent. The new purchaser did not pay a discounted price for the Maize Center; the price was unaffected by any alleged problems between Brown and the Maize Police Department. The new purchaser hired Brown to manage the Maize Center. As of the date of this motion, he still managed it. The only vacancy at Maize Center since April 2005 occurred when Tamales Mexican restaurant (Lubby, Inc.), vacated the premises in October 2005; it was replaced by a new Mexican restaurant.

Prestige Management, LLC was forfeited on July 15, 2007 and is not in good standing with the State of Kansas as of May 7, 2008. Sedgwick Properties, LLC was forfeited on July 15, 2007 and is not in good standing with the State of Kansas as of May 7, 2008.

**Conclusions of Law**

Plaintiffs contend that the Maize Police Chief or Police Officers under his direction solicited Maize Center Strip Mall tenant signatures on a "no trespassing" notice against Christopher Brown.

Brown contends that as a owner and manager of the Maize Center Strip Mall this alleged solicitation interfered with his right to own and operate his properties without interference from the police. The uncontroverted fact is that not a single tenant ever signed a no trespassing notice. It is also uncontroverted that Brown was never issued a no trespassing notice relating to the Maize Center. The alleged solicitation did not deprive Brown of any constitutional right or any other federally-protected right.

42 U.S.C. § 1983 requires an actual deprivation of a constitutional right. A mere attempt is not sufficient. The statute has no language that addresses attempts at deprivation. 42 U.S.C. § 1983 requires that the deprivation must result in actual injury to the plaintiff for liability to attach. A plaintiff seeking to recover under §1983 must therefore plead and prove "that he has suffered some injury in fact, that the interests sought to be protected are arguably within the zone of interest to be protected by the constitutional guarantee in question, and that there is a fairly traceable causal connection between the alleged deprivation or injury and the challenged conduct of defendants." *Lesser v. Neosho County Community College*, 741 F.Supp. 854, 860 (D. Kan.1990).

First, the uncontroverted facts show no "solicitation." Brown admits he did not witness any tenants being solicited to sign no trespassing notices. No tenants will testify that they were solicited by Jensby or any other officer. The defendants have been able to obtain affidavits from some of the tenant representatives. Those tenant representatives denied, under oath, that any solicitation to sign no trespassing notices occurred. In January of 2005, Jensby provided the no trespassing form and a note with instructions in response to a request from a tenant, Tamales. It is uncontroverted that Tamales had recently reported problems with Brown's activities in the restaurant and that Tamales had reportedly requested Brown stay out of the restaurant. Jensby believed the tenant had reason to

request the form. There is no evidence that Jensby solicited any tenants to sign no trespassing notices. Jensby is therefore entitled to summary judgment on plaintiffs' First, Fifth and Fourteenth Amendment claims.

Even if these facts could be contorted in such a manner as to establish a "solicitation," it is uncontroverted that it was unsuccessful. No tenant ever signed a no trespassing notice form. A threat to act or an attempt to act that is unsuccessful does not cause an injury. If there is no injury then there is no liability under 42 U.S.C. § 1983. On that basis alone, Jensby is entitled to summary judgment on plaintiffs' First, Fifth and Fourteenth Amendment claims.

The law is not clearly established that a solicitation to sign a no trespassing notice is prohibited. In determining whether a right is clearly established, the Supreme Court has adopted a more particularized approach to whether a right has been clearly established, requiring that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates this right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected . . . unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Id*. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006).

The right of the people to assemble peaceably is clearly stated in the First Amendment. The First Amendment does not guarantee a right to assemble wherever one chooses. The First Amendment right to assemble does not create an exception to private property rights and gives no right to assemble on property belonging to another. *See, e.g., D'Aguanno v. Gallagher*, 50 F.3d 877,

880 (11th Cir. 1995) (stating that although other cases have "recognized a general First Amendment right to peaceable assembly and freedom of association, they did not clearly establish that people have a right to pursue such ends on the property of another without the owner's permission.")

Furthermore, the right to assemble appears to be a collective or group right, rather than the right of a single individual. In *Van Deelen v. Johnson*, 535 F.Supp.2d 1227 (D. Kan. 2008), the court held that the plaintiff's claim that he was denied the right to assemble at the Douglas County Courthouse did not fall within the protection of the right to assemble. The court observed: "The right of assembly is the right to physically hold and attend meetings, marches, pickets, demonstrations, parades, and the like." 535 F. Supp. at 1233, citing *Hague v. Committee for Indus. Org.*, 307 U.S. 496, 512 (1939). Brown's attempt to invoke a personal right to assemble ignores the rights of others. The uncontroverted evidence is that some of the tenants of the Maize Center informed the Maize Police Department that they did not wish to assemble with Brown. Under Brown's theory, those individuals would be powerless to stop him from entering their leased premises and from harassing them. Under Brown's theory, the police could not assist the tenants of the Maize Center. The law does not support such an absurd result. The plaintiffs have failed to cite any authority for this position.

With respect to Brown's Fourteenth Amendment claim, there is no clearly established law holding that a law enforcement officer cannot ask a tenant to sign a no trespassing form. There are no Supreme Court or Tenth Circuit cases holding that the rights to contract, own property, and privacy rights preclude a law enforcement officer from offering assistance to a tenant. A tenant has the same rights to contract, own property and privacy. The evidence shows that one or more tenants had problems with Brown. The evidence shows that one or more tenants had an interest in keeping

Brown out of their leased premises. Jensby is qualifiedly immune and is entitled to summary judgment.

Neither 42 U.S.C. § 1983 itself, nor any other federal statute, provides a statute of limitations period for lawsuits under §1983. Instead, the Supreme Court has directed the lower federal and state courts to "borrow" a statute of limitations from the law of the relevant state. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980). Although this initially left some confusion regarding whether to borrow different state statutes for different types of § 1983 claims, the Supreme Court eventually clarified that there should be a single statute of limitations for § 1983 actions in each state and that the appropriate statute is the residual personal injury statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985). It is now well-established in Kansas that the appropriate statute of limitations for § 1983 suits is the two-year statute of limitations under K.S.A. § 60-513(a)(4) (limitations period for "an action for injury to the rights of another, not arising on contract and not herein enumerated"). *E.g., Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1188 (10th Cir. 2006).

It is uncontroverted that Brown became aware of the alleged solicitation in January or February of 2005. It is further uncontroverted that the solicitation is alleged to have occurred in January or February of 2005, which was more than two years prior to the filing of this lawsuit on May 31, 2007. Plaintiffs' claims for relief under the First, Fifth and Fourteenth Amendment were filed beyond the two-year limitations period of K.S.A. §60-513(a)(4), and are therefore barred, and on that bsis, Jensby is entitled to summary judgment on the plaintiffs' First, Fifth and Fourteenth Amendment claims.

There is a factual dispute between the parties as to whether Officer Gray actually threatened to arrest Brown on October 3, 2005. However, that dispute is not material to the question of qualified immunity.

The precise nature of plaintiffs' alleged claim against Officer Gray under the Fifth and Fourteenth Amendments is unclear. Plaintiffs have disclaimed any claim for deprivation of a liberty interest. Officer Gray's alleged threat to arrest Brown did not deprive him of his life. The alleged threat to arrest did not deprive Brown of any property. The plaintiffs have not been able to establish factually how the threat was a physical or bodily restraint.

In *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980), the Fifth Circuit found no valid § 1983 claim where the police had threatened the owner of a vehicle with arrest in the context of a repossession. In *White v. City of Markham*, 310 F.3d 989 (7th Cir. 2002), the plaintiffs got into a verbal confrontation with their landlord (a relative) when she tried to evict them. There was a dispute as to whether plaintiffs were entitled to maintain their possession of the property. The plaintiffs called the police for assistance but when the officer who responded found out the landlord owned the property, he ordered the plaintiffs to leave the premises or face arrest. Plaintiffs subsequently filed suit contending that the officer had assisted with an illegal eviction and therefore deprived them of their Fourth Amendment rights. The court held that even if these facts constituted a Fourth Amendment seizure, it was reasonable based upon the "explosive situation" that existed at the residence, the disputed possessory claims, and the officer's duty to maintain peace. Nor was it unreasonable to use the threat of arrest to accomplish this goal. *See Schlessinger v. Salimes*, 100 F.3d 519, 523 (7th Cir.1996) (holding that it was reasonable, and therefore not a Fourth Amendment violation, for an officer to threaten arrest in order to stop a restaurant patron's disorderly conduct).

Even assuming Gray had threatened to arrest Brown, such action was not prohibited by clearly established law. In the absence of a writ or court order, Gray could not adjudicate the parties' legal dispute on the spot. Gray resolved the situation in a reasonable and appropriate manner. She restored the parties to their original positions, Alvarez as a tenant in possession of the premises. Gray

is entitled to summary judgment on the plaintiffs' Fifth and Fourteenth Amendment claims, as there was no constitutional violation and she enjoys qualified immunity .

The plaintiffs' claim for "concerted action" is unclear.  In conventional usage, "concerted action" is the basis used to hold a private (non-state actor) party liable under 42 U.S.C. §1983 for his own actions under color of state law, by creating constructive state actor status.  *See, e.g., Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982) quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) ("Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.").

Jensby and Gray were City of Maize employees and were admittedly acting under color of state law (Dkt. No. 85 - page 2). Proper allegations of a conspiracy may state a viable claim under 42 U.S.C. § 1983. *Dixon v. Lawton*, 898 F.2d 1443, 1449 (10th Cir.1990); *Robinson v. Maruffi*, 895 F.2d 649, 654 (10th Cir.1990).  However, pleadings asserting such a claim "must specifically present facts tending to show agreement and concerted action." *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983).

In the present case, there is no allegation of any agreement and there is no evidence of concerted action.  Plaintiffs have failed to plead a conspiracy.  There is no evidence of agreement or of concerted action between defendants Jensby and Gray.  The uncontroverted facts establish that Jensby and Gray each acted alone. As a result, Jensby and Officer Gray are entitled to summary judgment on the concerted action claim.

Prestige Management, LLC and Sedgwick Properties, LLC were named as additional plaintiffs in the Second Amended Complaint, after defendants noted their absence in this litigation.

13

The Pretrial Order does not purport to assert any claim on behalf of either of Prestige or Sedgwick. The plaintiffs' contentions and theories speak exclusively in terms of Christopher Brown's rights. No violation of the rights of the two business entities is alleged. Those entities fail to state any claim, much less one upon which relief can be granted. The defendants are entitled to summary judgment with respect to Prestige Management, LLC and Sedgwick Properties, LLC.

Further, it is uncontroverted that the legal status of both Prestige and Sedgwick have lapsed and been forfeited. Those entities lacked the capacity to bring this action on December 21, 2007 (the day they were named as additional plaintiffs), and at all times since. The defendants timely raised this defense in their Answer to Second Amended Complaint, and preserved it in the Pretrial Order (Dkt. No. 85 - page 7). Defendants therefore are entitled to summary judgment against Prestige and Sedgwick.

The purported property rights cited as the basis of the claims against the defendants actually belong not to Brown but to Prestige. Prestige was a party to the tenant lease agreements. Prestige owned the Maize Center. Prestige transacted business with the tenants. Brown lacks standing to assert any claim based on any alleged deprivations of rights held by another.

The courts have consistently held that a shareholder of a company lacks standing to assert § 1983 claim on behalf of the company. In *Rosewood Service, Inc. v. Sunflower Diversified Services, Inc.*, No. 02-2140-JWL, 2003 WL 22090897 (D. Kan. Sept. 8, 2003), the court analyzed whether the principal, sole shareholder of a corporation could bring suit under § 1983 on behalf of the corporation. The court stated that "When an individual incorporates a company, that individual relinquishes the right to seek direct legal redress under § 1983 for injuries suffered by him or her as the corporation's sole shareholder and principal employee." (citing *Pothoff v. Morin*, 245 F.3d 710, 717 (8th Cir. 2001).

Like a stockholder in a corporation, a member of an LLC cannot assert rights belonging to the entity. Instead, those rights must be asserted by the entity itself. *See, e.g., Fowler v. Shaw*, 119 Kan. 576, 240 P. 970, 973 (1925)(corporation's property "does not in any correct sense belong to its stockholders"). The business entities are separate and distinct legal persons. Brown's ownership of an interest in those entities does not give him standing to personally sue to enforce alleged rights belonging to the entities. Defendants are entitled to summary judgment on all of Brown's claims which are based on rights belonging to other entities.

The bulk of plaintiffs' claimed damages in this case is $430,000.00 for alleged diminution in the value of the Maize Center. The law does not allow such a claim under 42 U.S.C. §1983, as a diminution in property value is not an unconstitutional deprivation of property or a taking. *See, e.g.*, *Fusco v. State of Connecticut*, 815 F.2d 201, 206 (2$^d$ Cir. 1987). ("[G]overnmental action [alleging causing a decline in property values] has never been held to "'deprive'" a person of property within the meaning of the Fourteenth Amendment."); *Mehta v. Surles*, 720 F.Supp. 324, 331 (S.D.N.Y. 1989), vac'd in part on other grounds, 905 F.2d 595 (1990) ("mere diminution in property value, however, is recognized neither as a Fourteenth Amendment property deprivation nor a Fifth Amendment taking.").

Even if that were not the case, there is no evidence of diminution in value here, and certainly not as a result of any alleged civil rights violation by the defendants. It is uncontroverted that the third party who purchased the Maize Center in September 2006 did not discount the price as a result of any alleged problems between Christopher Brown and the Maize Police. The claimed diminution in value is based on the difference between the assumed value of the Maize Center if an additional building had been constructed, and the price that was paid when Sedgwick sold the Maize Center in September

2006.  The speculative nature of this damages theory is compounded by the uncontroverted evidence that the decision of the Maize Discount Liquor Store owners not to expand their business and move into the proposed addition was not attributable to anything said or done by the City of Maize, but concerns about higher rent.

Prestige had financial problems resulting from cash flow problems with its other properties prior to any alleged conduct by the defendants.  Prestige was unable to pay the property taxes on all of its properties and defaulted on its loans. Emprise Bank then foreclosed its loans, and the Maize Center was eventually sold to satisfy the debt.  Maize Center was generally successful, losing only one tenant (Tamales), which Brown was in the process of evicting.  Further, Brown did not own Maize Center and therefore lacks standing to sue for any real or imagined diminution in the value of that property, which belonged to other entities.  Defendants are thus entitled to summary judgment on any claim for diminution in property value.

The defendants' motion for summary judgment (Dkt. No. 87) is granted.

IT IS SO  ORDERED THIS 30rd day of March, 2009.

                                                            s/ J. Thomas Marten  
                                                           J. THOMAS MARTEN, JUDGE